## PECK *against* WALLACE.

Though in order to effect a transfer of title in real estate by execution, the requirements of the statute must be strictly complied with, and such compliance must appear upon the face of the return, either by express averment or necessary inference ; yet certainty to a common intent, in the return, is sufficient ; and courts will look at it with the eyes of common sense, and apply to it the same rules of construction, which are applicable to other written instruments.

Therefore, where the return stated, that " the appraisers after viewing the land described, at 60 dollars *per* acre, as its true and just value, of which appraisal, said appraisers made and delivered a certificate," &c. ; and the certificate of the appraisers appended to the return, stated, that " the appraisers having been appointed and sworn to appraise the land described, at 60 dollars *per* acre, as the true and just value thereof, to be set off on execution ;" it was held, that the return, by necessary implication, showed an appraisal of the land ; and that the proceedings, being in other respects regular, were effectual to transfer the title.

The law requires no formality in the certificate of the appraisers ; any memorandum in writing under their hands, giving the officer correct information of the estimated value, being sufficient.

THIS was an action of ejectment; tried at *Litchfield, August* term, 1832, before *Bissell,* J.

The plaintiff claimed title to the demanded premises, by the levy thereon of two executions in his favour against *Mary Wallace*; and in support of his title, offered in evidence those executions with the officer's returns. The executions were in common form, and the returns on both were the same, *mutatis mutandis*. The only part of the return, which is material in this case, is the following : "And said appraisers, after viewing said land, at the sum of 60 dollars per acre, as its true and just value ; of which appraisal, said appraisers made and delivered to me a certificate, which is hereunto annexed; whereupon I set off to said creditor two acres, three quarters, &c. of land, bounded &c.,in full satisfaction of this execution and of my fees and charges thereon." Appended to the return, below the signature of the officer, were first the certificate of the magistrate who administered the oath to the appraisers, and then the certificate of the apppraisers ; the latter being in these words : " We the subscribers, freeholders of the town of *Litchfield*, having been appointed and sworn as above specified, [in the return] to appraise the land described above, at 60 dollars *per* acre, as the true and just value thereof, to be set off on ex-

*Litchfield,*
June, 1833.

Peck,
*v.*
Wallace.

ecution." [Signed by the appraisers.] The officer then certified, that these were the certificates, which were delivered to him, by the magistrate and the appraisers respectively.

To the admission of these documents in evidence, the defendant objected, for reasons appearing on the face of them. The judge overruled the objection, and admitted the evidence.

The plaintiff obtained a verdict; and the defendant moved for a new trial, claiming that the decision was erroneous.

*Seymour* and *Woodruff,* in support of the motion, contended, That it did not appear from the officer's return, that any " estimate in writing" was ever delivered to him. The court will give a *strict* construction to proceedings in the acquisition of title by execution. Every requisite to a valid levy must distinctly appear. *Metcalf* v. *Gillet* & al. 5 *Conn. Rep.* 400, 403. *Hobart* v. *Frisbie,* 5 *Conn. Rep.* 592. 595. *Mitchell* v. *Kirtland,* 7 *Conn. Rep.* 229. 231. The court are to decide on the words, which the written document contains; and what is the legal construction of the *words used,* is the only enquiry. 6 *Conn. Rep.* 120. 2 *Conn. Rep.* 528. 1 *Salk.* 324. Now, the appraisers have not said, that they *did appraise* the land. Can the court, in deciding on the words used, say, that the appraisers have said so?

In *Stanton* v. *Button,* 2 *Conn. Rep.* 527., subsequently recognized in *Pendleton* v. *Button,* 3 *Conn. Rep.* 406., the word " acknowledged " was omitted in the certificate of acknowledgement; and it was held, that the omission could not be supplied, by intendment or construction. There, the omission was the fault of neither party; *no doubt* existed but that the deed was in fact acknowledged; none as to the intention of the parties or of the magistrate. It was urged, that the court should give it effect *ut res* &c.; that it was a clerical mistake; and that no word of a different import could be supplied; but still the court held the omission fatal. The principle decided in that case, must govern this. The operative word, in both cases, is wanting; and the reasons for supplying a word were as strong in that case as in this. The only difference is, that was a transfer of title by *deed;* this, by *execution*—a difference in favour of the defendant.

The defect in the certificate of the appraisers, is not help-

ed, by any thing in the return. The officer does not say, that they appraised the land, or, in the language of the statute, "made an estimate of it in writing, according to its true value."

*Litchfield,*
*June, 1833.*

Peck,
*v.*
Wallace.

*Bacon* and *T. Smith*, contra, admitting, that the return must show a compliance with all the statute requisitions, insisted, That upon a reasonable construction of the return in this case, such requisitions have been fully complied with.

In the first place, the return shews, that the appraisers were appointed and sworn to appraise the land; and it is to be presumed, that they did their duty.

Secondly, the return shews, that the appraisers, after viewing the land, *did some act;* and this obviously was, appraising the land at its true and just value.

Thirdly, the averment in the return, that the appraisers "viewed the land at 60 dollars *per* acre as its just and true value," is in substance affirming, that they examined the land, and came to the conclusion that it was worth that sum *per* acre.

Fourthly, the case is relieved of all doubt, by the subsequent clause—" of which *appraisal* the appraisers delivered to the officer a certificate in writing."

Fifthly, the law does not require, that the appraisers should give a formal statement of their doings; but a mere memorandum of their estimate—*e. g.* "$60 *per* acre"—is sufficient. It need not be recorded. *Isham* v. *Downer*, 8 *Conn. Rep.* 282.

Lastly, if the certificate in question is fatally defective, unless the word "appraised," or some word of equivalent import, be supplied, the authorities abundantly justify the insertion of such word, or a construction having the same effect. *Brace* v. *Catlin*, 7 *Conn. Rep.* 358. n. *Couch* v. *Gorham*, 1 *Conn. Rep.* 36. *Bigelow* v. *Benedict*, 6 *Conn. Rep.* 116. 121. *Booth* v. *Wallace*, 2 *Root*, 247.

BISSELL, J. The only question, in this case, regards the admissibility of the evidence, offered by the plaintiff, in support of his title. This evidence consists of two executions, with the returns of the officers thereon. They are both open to the same objection, *viz*. That it does not appear, by the

*Litchfield,*
June, 1833.

Peck,
*v.*
Wallace.

returns, that the lands in question were ever, in fact, appraised.

That the returns are imperfect, is readily admitted. But is there, on a fair construction, enough appearing upon them, to satisfy us, that there has been an appraisal of these lands?

It has been contended, and it is undoubtedly true, that in order to vest a title to lands in the execution creditor, by virtue of his levy, the requirements of the statute must be strictly complied with; and that such compliance must be manifested upon the face of the return, either by express averment, or by necessary inference.

Still it is not required, that the return of the officer should be framed with that strict regard to technical precision, which prevails in special pleadings. Certainty to a common intent, is all that is required. And courts will look at the return with the eyes of common sense; and apply it to the same rules of construction, which are applicable to other written instruments. Now, looking at the return before us, in that light, and applying these rules, it seems impossible to mistake its meaning, or to resist the conviction that the lands were duly appraised. The return states, that the appraisers " *after viewing* the land described, at the sum of sixty dollars *per* acre, as its true and just value, of *which appraisal,* said appraisers made and delivered a certificate," &c.

It is not here indeed asserted, *in terms*, that the lands were appraised;—but that they were, is, I think, necessarily implied. The sentence is doubtless defective. But may not the words " *they appraised*" be supplied, without difficulty, and without violating any principle of sound construction?

Again; the word "viewing" is, in many cases, synonymous with the word " *considering*," and imports an intellectual examination. Had, then, the officer returned, that the appraisers, after " *considering*" the land at sixty dollars *per* acre, as its true and just value, delivered an *appraisal* in writing; could we have any difficulty in finding, that there had been an appraisal, according to the requirements of the statute? It seems to me not. In *Brace v. Catlin,* 7 *Conn. Rep.* 358. n. there was no direct averment in the return of the officer, that he had *levied* the execution on the lands; yet the levy was sustained. *Smith,* J., in pronouncing the opinion of the Court, says : "If the law requires all the facts, necessary to constitute a title

under the levy of an execution to be stated in the return of the officer, with the technical precision of special pleading, I should admit that the present return is insufficient. But no such strictness has ever been required; and certainty to a common intent has been deemed sufficient. When, therefore, I look over this return, with a view to put that rational construction upon it, which we always feel ourselves at liberty to put on other written instruments, I discover clearly, that the execution has been levied on the land, though the word "levy" is not used in the return.

In *Couch* v. *Gorham,* 1 *Conn. Rep.* 36. the word "die," the operative word in the devise, and upon which the whole case turned, was supplied, by the Court: and upon the ground, that taking the whole will together, the intent of the testator was manifest, and could not be effectuated, but by supplying a word evidently omitted by mistake.

The principles here laid down have been adopted in a multitude of cases: and it seems to me, that it is only necessary to apply these principles to the case before us, in order to sustain the return of the officer.

It has, however, been urged, that, although the return of the officer, standing alone and by itself, might be sufficient; yet as reference is made to the certificate of the appraisers, and as that is appended to, and thus made a part of the return, the question turns upon the validity of the certificate; and if that be invalid, the return must be deemed insufficient. Admitting this to be so, we are then led to enquire, whether the certificate is so far informal as to invalidate a return, which, without the certificate, would have been valid?

The certificate appended shows, that the appraisers were legally appointed and sworn. Their own certificate states, that "having been appointed and sworn, as above, to appraise the land described above, at sixty dollars *per* acre, as the true and just value thereof, to be set off on execution." I would here remark, that the same principles, which have been adverted to, as going to support the return of the officer, apply, with equal force, to the certificate before us. Can we view the certificate in that light, and fail to see, that there was an appraisal of the land? What was the object of the statute in requiring a certificate in writing, to be delivered to the officer? Clearly, that he might be informed at what sum the

*Litchfield*
June, 1833.
———
Peck,
*v.*
Wallace.

lands levied on were appraised; and that he might thereby be enabled to discharge his duty.   How could he, holding in his hands, the certificate of the magistrate, showing that these men were appointed and sworn to appraise these lands; and holding also the certificate in question; could he doubt that the lands were appraised; and so appraised, as to authorise him to set them off upon his executions?   The presumption of law that the appraisers had done their duty, he would adopt, and act upon, notwithstanding any informality in their certificate.   The law indeed requires no formality: a mere memorandum of the price, would, it is presumed, be sufficient. The law only requires, that it sould be in writing, under the hands of the appraisers; and that it should give the officer correct information.

Taking the whole return together, I have no doubt of its sufficiency; and that it was properly received in evidence.

I would not, therefore, advise a new trial.

The other Judges were of the same opinion, except PETERS, J., who was absent.

New trial not to be granted.